UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA COTTEN, and
JAMES SCOTT EL,

          Plaintiffs,          CIVIL ACTION NO. 04-CV-73508-DT

   vs.

                                DISTRICT JUDGE GERALD E. ROSEN

SHERRY L. BURT, et. al.,          MAGISTRATE JUDGE MONA K. MAJZOUB

          Defendants.
_____/

## REPORT AND RECOMMENDATION

The Court should construe part of Defendants' Motion for Summary Judgment as a Motion to Dismiss, and should **DENY** the rest of Defendant's Motion as premature.  Plaintiff Scott El's Complaint should be **DISMISSED** for failure to exhaust**.**  Plaintiff Cotten's Complaint should not be dismissed.

I.    __Background__

Plaintiff Patricia Cotten filed suit under 42 U.S.C. § 1983 on September 9, 2004.  Plaintiff filed an Amended Complaint on December 6, 2004.  Plaintiff James Scott El is a prisoner in the Southern Michigan Correctional Facility ("JMF"), located in Jackson Michigan.  He filed a Motion to Intervene on December 6, 2004, which the Court granted on January 14, 2005. Defendants Sherry Burt, Captain Francine Powell, Lieutenant Sherman Campbell, and the unidentified Defendants designated as John Does are Michigan Department of Corrections ("MDOC") employees working at the JMF.

On February 14, 2005 Defendants filed a Motion for Extension of Time to File a Responsive Pleading.  The Court granted Defendants Motion on February 24, 2005, and gave Defendants until March 11, 2005 to file a responsive pleading.  On March 14, 2005, after the time the Court had designated for filing a responsive pleading had expired, Defendants filed Motion for Summary

Judgment.  Plaintiffs have responded to the motion.  The Court finds that the factual and legal issues have been adequately presented in the briefs, and that oral argument would not significantly aid in the determination of this motion.  The Court has dispensed with oral argument pursuant to Local Rule 7.1(e)(2) and orders that the Motion be resolved on the briefs submitted.  Defendants have not, to date, filed an Answer or any other responsive pleading under Federal Rule of Civil Procedure 12, and discovery has not commenced.

**II.**   <u>**Facts**</u>

On December 3, 2003 Cotten visited Scott El at JMF.  After the visit, a JMF Sergeant served Scott with a Notice of Intent ("NOI") to classify him in "Administrative Segregation." The NOI was written by Defendant Campbell: "per a confidential statement, [Scott] was going to attempt to smuggle drugs into the facility by way of the visiting room.  Prisoner Scott should be placed in a observation dry cell in temp seg, until further investigation, SCC review and proper placement is determined."  (Pl. Scott's Compl. at 7 ¶ 15).  In particular, Defendants maintain that Plaintiff Cotten was seen putting something in Plaintiff Scott El's mouth.  Plaintiffs argue that this report was clearly in error, and that Defendants should known this from the clear videotape the prison made of their December 3, 2003 visit.  After Cotten left the prison, an unidentified corrections officer prevented Cotten from leaving the parking lot until he had copied her license plate number.  (Pl. Cotten's Am. Compl. at 5 ¶ 12).  Scott El was placed in a "dry cell" until he defecated and prison officials confirmed that he had not swallowed drugs during Cotten's visit.  *Id.*  Scott El was then released from the solitary dry cell.  *Id.*  Plaintiff Scott El alleges that JMF officials knew all along that Scott El was not involved in any drug transaction, and were merely attempting to make his life difficult because he had recently been named an official in the prison's chapter of the Moorish Science religion.

2

On January 24, 2004 Cotten returned to JMF for another visit with Scott at which time she was informed that "she was permanently restricted from visiting with prisoner James Scott." Cotten was ultimately permitted to visit with Scott El that day but was made to sit next to the officer's station. (Cotten's Am. Compl. at 5 ¶ 14).

Scott El filed a grievance regarding the NOI and was soon transferred to Lakeland Correctional Facility ("LCF"). Scott submitted another grievance alleging the transfer was retaliation for his grievance filings and that the transfer prevented him from completing a Visual Graphic Arts and Apprenticeship class at JMF. (Pl. Scott's Compl. at 8 ¶ 19). He also complained that around the time of the transfer, JMF officials had listed his status as "discharged" on an MDOC website, thereby preventing persons outside of the prison from learning his true location. LCF officials corrected the problem after several weeks.

Scott was transferred from LCF to the Muskegon Correction Facility ("MCF") three weeks later because LCF officials received information that Plaintiff was involved with drugs. Scott filed a grievance alleging that he was not involved in drugs, and that JMF officials had intentionally given LCF officials misleading information. *Id.* Plaintiffs allege that a JMF prisoner, Brian Stoychoff provided the information. *Id.* at 9 ¶ 22. MCF staff placed Scott El in temporary segregation based upon Stoychoff's allegation that he feared for his life because of Scott, but the MCF Warden ordered Scott El released. *Id.* at 10 ¶ 23. Scott asserted in the grievance that Defendants Powell and Campbell relied upon Stoychoff's statements against him simply because Stoychoff is white and he an asiatic moorish American. *Id.* at 10 ¶ 24.

Cotten visited Scott on February 27, 2004 at MCF. Cotten was again told she was permanently restricted from visiting Scott. Cotten insisted that this restriction was an error. Cotten was then

3

permitted to visit with Scott but was required to sit in close proximity to the officer's station. (Cotten's Am. Compl. at 5 ¶ 15).

Cotten later telephoned the Administrative Assistant to the MCF Warden and inquired about the reason for the restriction. Cotten was informed that the "visitation restriction was removed, but an investigation was being conducted . . . for suspected drug smuggling/trafficking for prisoner Scott [and] [t]hat . . . until the investigation was completed, Plaintiff [Cotten] would be required to sit next to the officer's station for close observation." *Id.* ¶ 16.

On May 19, 2004 Cotten visited Scott El at the Riverside Correctional Facility ("RFC"). She was again informed that a permanent restriction prevented her from visiting with Scott. Cotten stated that this was in error. Cotten waited for over an hour and was then permitted to visit with Scott El. However, she was informed by RFC staff that the Visitor Tracking display noted a restriction because of drug activity entered at JMF on December 3, 2004. (Scott's Compl. at 12 ¶ 27; Cotten's Am. Compl. at 6 ¶ 17). Scott subsequently filed another grievance alleging that his constitutional rights were violated by the imposition of visitation restriction. (Scott's Compl. at 12 ¶ 27).

## III.   LAW AND ANLAYSIS

### A.   Defendants' Motion

Although Defendants' Motion is styled as a Motion for Summary Judgment, it is the first substantive motion filed in this case, and Defendants apparently believe that it can substitute for an Answer or other responsive pleading. When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED. R. CIV. P. 12(b)(6); *see Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). "Dismissal of a complaint for the failure to state a claim upon which relief may be granted is appropriate

4

only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 1997).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings and affidavits. *Ashbook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

Defendants' decision not to file an Answer or other Motion under Federal Rule of Civil Procedure 12 in response to Plaintiff's Amended Complaint, filed almost two years ago, is a perilous one, exposing them to a risk of a default. Some portions of Defendants' Motion state grounds for dismissal that would be appropriate in a motion under Federal Rule of Civil Procedure 12(b)(6). Such a motion would have been the appropriate one for Defendants to file in March 2005 in lieu of an Answer. The Court construes Defendants' Motion liberally and will treat it as though it were a timely-filed Motion to Dismiss. Other portions of Defendants' Motion state grounds on which summary

5

judgment but not dismissal might be appropriate.  Because Plaintiffs have not yet had the benefit of

discovery (or even Defendants' Answer to the Complaint), the Court considers those portions of

Defendants' Motion premature.

**B.     Exhaustion of Remedies**

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all

administrative remedies before filing a section 1983 action.  42 U.S.C. § 1997e.  Specifically, the statute

provides, "no action shall be brought with respect to prison conditions under section 1983 . . . by a

prisoner confined in any jail, prison or other correctional facility until such administrative remedies as

are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has declined to "read futility

or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."

*Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  The Sixth Circuit has held that "prisoners filing a § 1983

case involving prison conditions must allege and show that they have exhausted all available state

administrative remedies" before a district court may adjudicate their civil rights claims, and has also held

that the district court should enforce this requirement *sua sponte*.  *Brown v. Toombs*, 139 F.3d 1102, 1103

(6th Cir. 1998), *cert. denied*, 525 U.S. 833 (1998).  Compliance with this provision requires that prisoners

file a grievance against the person(s) they ultimately seek to sue,  *Curry v. Scott*, 249 F.3d 493, 505 (6th

Cir. 2001), and merely grieving prison conditions, without identifying any particular person who may

be responsible, is insufficient.  *Gibbs v. Bolden*, 151 F. Supp.2d 854, 857 (E.D. Mich. 2001).

Generally, a prisoner will exhaust administrative remedies by filing grievances pursuant to

MDOC policy.  For example, a prisoner may grieve alleged violations of policy and procedure,

unsatisfactory conditions of confinement, official acts, or denial of rights which directly affect

[Prisoners] (MDOC Policy Directive 03.02.130, PB).  The grievance system is comprised of three steps.

If the grievant is dissatisfied with the step I response, he/she may appeal to step II.  If the prisoner is

still dissatisfied with the step II response, he/she may file a step III appeal with the Director of the MDOC. A Plaintiff must pursue all levels of the administrative procedure, even when prison officials fail to respond or respond in an untimely manner. *Grabinski v. Gundy*, 1999 U.S. Dist. LEXIS 4820 (W.D. Mich. 1999)(citations omitted).

In *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), the Sixth Circuit adopted a mandatory total exhaustion rule, which requires that a federal court dismiss a prisoner's entire complaint whenever a prisoner has exhausted with respect to some, but not all of his claims. Defendants strenuously argue that the Court should apply *Jones-Bey* to dismiss Plaintiff's claim. Defendants do not point out the substantial adverse precedent within the Sixth Circuit regarding the validity of *Jones-Bey* and its progeny. Though the Court ultimately concludes that *Jones-Bey* is still good law, Defendants' failure to identify multiple Sixth Circuit cases questioning the status of *Jones-Bey* as precedent is a serious defect in their Motion to Dismiss.

For his part, Plaintiff argues that PLRA's exhaustion framework is invalid because it violates Plaintiff's procedural due process rights. Specifically, Plaintiff quotes the hoary legal maxim that "there is no right without a remedy" in support of his argument that he has a constitutional right to have his § 1983 claims heard in federal court, notwithstanding his failure to exhaust his administrative remedies as required by PLRA. Turning to more apposite sources of law, Plaintiff relies on portions of the Ninth Circuit's decision in *Ngo v. Woodford*, 403 F.3d 620 (2005) *rev'd Woodford v. Ngo*, 126 S.Ct. 2378 (2006) that are highly critical of the exhaustion requirement. The Ninth Circuit was emphatically reversed by the Supreme Court's decision in *Woodford*. A Plaintiff subject to PLRA must properly exhaust his administrative remedies before bringing a claim in federal court. *Woodford*, 126 S. Ct. at 2388. A prisoner who fails to present his claims within the time for filing grievances established by prison procedures cannot then bring his claims in federal court. *Id.* In construing PLRA's statutory

7

requirements this way, the Supreme Court implicitly held that the PLRA exhaustion scheme was constitutional. The question is therefore whether the law of the Sixth Circuit requires dismissal of Plaintiff's complaint for failure to totally exhaust.

Dissenting in *Jones-Bey*, Judge Clay argued that the Sixth Circuit had already ruled on the total exhaustion question, and rejected a mandatory total exhaustion rule in *Hartsfield v. Vidor*, 199 F.3d, 309 (6th Cir. 1999). Judge Clay argued that *Hartsfield* could only be overturned by an *en banc* decision under Sixth rule 206(c).

Following the *Jones-Bey* decision, some District Courts followed Judge Clay's reasoning and declined to apply the *Jones-Bey* rule. In a more recent case, *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006). the Sixth Circuit reiterated its view that *Jones-Bey* was the rule of the Circuit, and stated that the portion of *Hartsfield* upon which Judge Clay had relied was dicta. Another panel of the Sixth Circuit then adopted Judge Clay's reasoning from *Jones-Bey*, stated that *Hartsfield* and another case had already ruled on the total exhaustion question at the time *Jones-Bey* was decided, and went on to apply a rule of partial exhaustion to the prisoner complaint before it. *Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006).

It would appear that an *en banc* rehearing of *Jones-Bey*, *Rinard*, or *Spencer* would have given better guidance to courts in this Circuit. In the aftermath of *Spencer*, District Judges have continued to reach conflicting conclusions about the viability of the total exhaustion rule in the Circuit. *Compare Hardaway v. Haggerty*, 2006 WL 1663317 (E.D. Mich.,2006) (applying partial exhaustion and following *Spencer*) *with Boling v. Oakland County Jail, 2006 WL 581034* (E.D. Mich. 2006) (applying total exhaustion and following *Jones-Bey*). This situation will eventually be resolved. The Supreme Court has granted certiorari on the total exhaustion question in *Jones v. Bock,* --- U.S. ----, 126 S.Ct. 1462, 164 L.Ed.2d 246 (U.S. Mar.6, 2006) and *Williams v. Overton,* --- U.S. ----, 126 S.Ct. 1463, 164 L.Ed.2d 246 (2006).

While the briefing schedule has been set in the Supreme Court, oral argument is not yet scheduled, and a decision may not be rendered in *Bock* and *Overton* for many months. The instant motions have already been pending for several months, and the Court must apply the law of the Sixth Circuit as it finds it. Plaintiff has not identified adequate reasons to delay decision in this case for additional months pending the uncertain outcome of a Supreme Court case. The Court agrees with the analysis of the majority of judges who have considered whether *Jones-Bey* was rendered in compliance with Sixth Circuit Rule 206(c), and finds that *Jones-Bey* is still good law. *See e.g., Boling, 2006 WL 581034* (E.D. Mich. 2006).

Even if the Supreme Court were to rule in *Bock* and *Overton* that a District Court may not dismiss the entirety of a complaint containing exhausted claims, the Court should still dismiss Plaintiff's Complaint. Prisoners must file grievances against the specific people they ultimately seek to sue. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). Merely grieving prison conditions, without identifying any particular person who may be responsible, does not exhaust claims against any Defendant. *Gibbs v. Bolden*, 151 F. Supp.2d 854, 857 (E.D. Mich. 2001).

A review of the grievances attached to Plaintiff Scott El's Complaint reveals only two grievances that grieve conduct by JMF employees. (Pl. Scott El's Compl. at Ex. 2, 3). The grievance attached as Exhibit 2 to his Complaint fails to specifically identify Defendant Campbell, Burt, or Powell, or any specific JMF employee personally involved in the alleged violation of Plaintiff's rights. The grievance attached as Exhibit 3 complains about Plaintiff's allegedly retaliatory transfer to LCF. Plaintiff's Complaint alleges that, in retaliation for Plaintiff exercising his right to practice the Moorish Science religion, Defendants Campbell, Burt, and Powell conspired to have him listed on MDOC computers as involved in drug smuggling activity. Plaintiff Scott El's complaint does not demonstrate that he exhausted his administrative remedies against the named Defendants on this claim. Plaintiff Scott El's

9

Complaint also fails to allege circumstances that would have excused his failure to specifically identify the named Defendants at the time of the grievances. Plaintiff Scott El's Complaint contains at least one unexhausted complaint against at least one Defendant, and his Complaint must therefore be **DISMISSED**.

**C.      Personal Involvement, Qualified Immunity, and Equal Protection**

Defendants argue that Plaintiff Cotten's Amended Complaint must be dismissed because she has failed to prove that the named Defendants were personally involved in the alleged violations of her rights. Plaintiff Cotten's Amended Complaint alleges that Defendants conspired together to obstruct her visitation rights by placing evidence that she had been involved in drug smuggling in MDOC computers even though they knew that she was not involved in drug smuggling. Plaintiff has, thus far, failed to prove her allegations, and Defendants' Motion for Summary Judgment contains affidavits tending to undermine her allegations. However, Plaintiff has not yet had the opportunity to take discovery on the issues raised in her Amended Complaint. Plaintiff's allegations alone raise questions of fact sufficient to survive a motion to dismiss, and summary judgment on this issue is therefore premature.

Defendants similarly argue that Plaintiff Cotten has failed to show that their conduct was motivated by her race, or that the restrictions placed on her visitation were not reasonably related to legitimate penological objectives. On its face, Plaintiff's Amended Complaint alleges in the alternative that the visitation restrictions were motivated solely by racial animus, or were put in place for no reason at all. Defendants' argument that Plaintiff has failed to produce evidence on this point is irrelevant to the evaluation of Plaintiff's Amended Complaint on a Motion to Dismiss. Plaintiff's initial burden is to produce evidence suggesting racial animus in this case. Once Plaintiff has done so, Defendants must produce evidence that their actions were reasonably related to legitimate penological interests, and were

10

not motivated by race. The Court will not conclusively determine these disputed issues of fact prior to the onset of discovery.

### D.      Absolute Eleventh Amendment Immunity

Defendants argue that Plaintiff Cotten's Amended Complaint is foreclosed by the Eleventh Amendment. Defendants characterize Plaintiff's complaint as seeking an injunction prohibiting MDOC officials from labelling anyone as a drug smuggler. Plaintiff Cotten's complaint seeks an injunction preventing Defendants from suggesting that she is involved in smuggling drugs into Michigan prisons and requiring Defendants to delete any mention currently in MDOC computers that Plaintiff is suspected of smuggling drugs into prisons. Plaintiff's suit does not ask, as Defendants argue, for injunctive relief or declaratory judgment affecting all Michigan prisoners. Rather, she asks that Defendants treat her like other civilians who are not suspected of drug smuggling. Defendants' citation to *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), holding that the Eleventh Amendment bars a suit involving the drawing of boundaries between Idaho and a sovereign Indian reservation, is inapposite. The Sixth Circuit has frequently held by implication that the Eleventh Amendment does not bar suits by prisoners against state officials for injunctive relief  that does not extend beyond the treatment of the individual prison. *See e.g., Jones-Bey v. Johnson*, 407 F.3d at 807. Therefore, the Eleventh Amendment does not bar the claims in Plaintiff Cotten's Amended Complaint.

### E.      42 U.S.C. § 1997e(e)

Defendants argue that Plaintiffs' allegations of mental distress must be dismissed pursuant to 42 U.S.C. § 1997e because Plaintiffs do not also allege a definite physical injury. 42 U.S.C. § 1997e applies, by its terms, to incarcerated persons. As the undersigned has pointed above, Plaintiff Scott El's Complaint should be dismissed for failure to exhaust administrative remedies. Defendants have cited no authority for the proposition that the Prison Litigation Reform Act applies to persons who merely

11

visit a jail and have not been arrested, convicted, or detained.  Defendants' argument does not present a reason to dismiss any of Plaintiff Cotten's claims.

Plaintiff Scott El's Complaint should be **DISMISSED**.  Plaintiff Cotten's Complaint should not. Defendants Motion for Summary Judgment should be **DISMISSED**.

## NOTICE TO PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of Health and Human Servs., 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  Willis v. Secretary, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 08, 2005                            s/ MONA K. MAJZOUB
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE

**<u>Proof of Service</u>**

I hereby certify that a copy of this Order was served upon Patricia Cotten, James Scott and

Counsel of Record on this date.


Dated: August 08, 2005                                    s/ Lisa C. Bartlett
                                                         Courtroom Deputy