## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**PATRICIA COTTEN,**
**et al.,**

    **Plaintiffs,**    **CIVIL ACTION NO. 04-CV-73508-DT**

  **vs.**

          **CHIEF DISTRICT JUDGE GERALD E. ROSEN**

**SHERRY L. BURT, et al.,**    **MAGISTRATE JUDGE MONA K. MAJZOUB**

    **Defendants.**
_____/

### REPORT AND RECOMMENDATION

**I.**  **RECOMMENDATION:**  The Motion for Summary Judgment filed by Defendants Burt, Campbell, and Powell (docket no. 120) should be **GRANTED,** and this case should be **DISMISSED.**

**II.**  **REPORT:**

  This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Sherry Burt, Sherman Campbell, and Francine Powell.  (Docket no. 120).  Plaintiffs have responded to Defendants' motion.  (Docket no. 124).  This matter has been referred to the undersigned for all pretrial proceedings. (Docket no. 126).  The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e).  Defendants' motion is now ready for ruling.

  **A.**  **Factual Background**

  This is a civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (Docket no. 98 at 2).  Plaintiff Patricia Cotten is an African-American civilian who visited Plaintiff Scott (identified as a Moorish American) when he was incarcerated in the Michigan state prison system.  (*Id*. at 6).

-1-

The remaining Defendants in this action are the three now moving for summary judgment. Defendant Burt was the Warden of Southern Michigan Correctional Facility (JMF) at the relevant time.  Defendant Powell was a correctional officer (captain) at JMF.  Defendant Campbell was also a correctional officer (lieutenant) at JMF.  (*Id*. at 6-7).

Plaintiff Scott claims that in November 2003 Defendant Powell proposed to him that he use his prison religious position as Assistant Grand Sheik to report to JMF officials "everyone that was involved in drugs."  (Docket no. 98 at 7).  Defendant Powell allegedly told Plaintiff Scott that if he did not accept this proposal "he would end up in the hole, lose his visits, be transferred and would no longer be the Assistant Grand Sheik at JMF."  (*Id*.).  Plaintiff Scott declined this proposal.  (*Id*.).

On December 3, 2003 Plaintiff Cotten visited Plaintiff Scott at JMF.  At the conclusion of that visit a JMF sergeant served him with a Notice of Intent to classify to administrative segregation (NOI) which was written by Defendant Campbell.  (*Id*. at 7-8).  The NOI stated that according to a confidential statement Plaintiff Scott was going to attempt to smuggle drugs into JMF through the visiting room.  (*Id*. at 8).  Prison officials placed Plaintiff Scott in a "dry cell" until he defecated after which no drugs were found.  (*Id*.).  Plaintiff Scott was released from segregation on December 4, 2003.  (*Id*.).  Plaintiff Scott contends that it was Defendant Powell's plan to put him in segregation, deprive him of visits, and transfer him.  (*Id*.).

On January 24, 2004 Plaintiff Cotten came to JMF to visit Plaintiff Scott and, after initially being told that she was prohibited from visiting him, was allowed to see Plaintiff Scott.  (*Id*.).  On February 5, 2004 Defendant Vallie transferred Plaintiff Scott to another prison (LCF) allegedly in retaliation for Plaintiff filing grievances at JMF and allegedly in furtherance of Defendant Powell's conspiracy plan.  (*Id*. at 9).  Upon his arrival at LCF, Plaintiff Scott's pen number which permits him

to make outside phone calls had been deleted, and he was designated as being discharged from prison. (*Id*. at 9-10). Prison officials stated in response to Plaintiff Scott's grievance that his transfer was routine to facilitate a trade with LCF. (*Id*.).

On February 27, 2004 Plaintiff Scott was transferred from LCF to MCF because of allegations that he was involved in drug activity at LCF. (*Id*. at 10). At MCF the prison staff attempted to place Plaintiff Scott in administrative segregation based upon a complaint made by prisoner Stoychoff alleging that he feared for his life once Plaintiff Scott arrived at MCF. (*Id*. at 11). Because Plaintiff Scott "knew nothing about Stoychoff," Plaintiff Scott was released from segregation.[1] (*Id*.).

On February 27, 2004 Plaintiff Cotten visited Plaintiff Scott at MCF. She was informed by MCF staff that she could not visit because a visitor restriction was allegedly filed against her. (*Id*.). After her protests, Plaintiff Cotten was allowed to visit Plaintiff Scott. (*Id*.).

On May 19, 2004 while Plaintiff Scott was housed at RCF he alleges that Plaintiff Cotten visited him but was delayed because of a computer notice under her name because of a "drug situation." (*Id*. at 13). The information was supposedly entered into the computer on December 3, 2003. (*Id*.). The Plaintiffs were allowed to visit each other after the situation was resolved. (*Id*.).

## B.    Claims

In Count I Plaintiff Scott claims that Defendants Burt, Vallie, Powell, and Campbell conspired to put him "in the hole, take his visit [sic], and transfer him as retaliatory reprisals for exercising his right to practice his religion without accepting the proposal as offered by Powell."

---

[1] Plaintiff states that Stoychoff later submitted a sworn statement to prison officials admitting that he made a false statement against Plaintiff and that Plaintiff was not involved in drugs. (Docket no. 98 at 11).

-3-

(*Id*. at 14).  In Count II Plaintiffs allege that Defendants Burt, Vallie, Powell, and Campbell violated their due process rights by designating them as "drug smugglers" without the benefit of a hearing. (*Id*. at 15).

In Count III Plaintiffs allege that Defendants Burt, Vallie, Powell, and Campbell violated their equal protection rights by transferring Plaintiff Scott because he filed grievances which "transfer would cost him the career opportunity in the field of Visual Graphic Technology, where upon completion he would have had a job in the printing factory, making $150. a month, and upon release from prison he could have made $100,000. a year." (*Id*. at 17).  Plaintiff Scott also contends that the transfer interfered with his right to practice his religion.  (*Id*.).  Plaintiff Scott further contends that Defendants should have ensured that he was separated from prisoner Stoychoff.  (*Id*. at 18).  Plaintiffs ask the Court to enjoin Defendants from continuing to maintain that they are smuggling drugs into correctional facilities, order Defendants to remove all adverse notations from the prison visitor tracking system referring to them as smugglers, declare that their constitutional rights were violated, and award damages.  (*Id*. at 19).

Defendants move for summary judgment on several bases.  They argue that Plaintiffs were never denied a visit and therefore cannot show a constitutional violation on the visitation issue. Also, Defendants argue that they had no personal involvement in Plaintiff Scott's transfers or the entry of information into the computer system, that Plaintiffs' allegations of discrimination based on race are conclusory, that transfer to a different prison is not an adverse action for retaliation purposes and there is no causal connection to Plaintiff Scott's grievances, that injunctive relief is not available, and that Defendants are entitled to immunities.  (Docket no. 120).

-4-

C.      **Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To establish a violation of 42 U.S.C. § 1983, Plaintiffs must show that they were deprived of a right secured by the Federal Constitution or laws of the United States and that the deprivation was caused by someone acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). Section 1985 pertains to conspiracies to interfere with civil rights, and under section 1985(3) Plaintiffs must show a conspiracy motivated by a class-based animus. *Lorenzi v. Lorenzi*, 44 Fed. App'x 683 (6th Cir. 2002). A conspiracy is an agreement between persons to engage in conduct which constitutes a crime or an attempt or solicitation to commit such crime. *Walker v. Michael W. Colton Trust*, 33 F. Supp. 2d 585, 595 (E.D. Mich. 1999). Section 1986 creates a cause of action for knowing failure to prevent a section 1985 conspiracy. There is no cause of action under section 1986 without one under section 1985. *Lorenzi*, 44 Fed. App'x at 685.

### D.      Analysis

#### 1.      Res Judicata

In their Response, Plaintiffs contend that Defendants' motion should be denied based on res judicata because the undersigned earlier recommended denying a previous motion for summary judgment made by the Defendants, and the district court adopted that Recommendation.  (Docket no. 35).  This Court found on Defendants' previous motion that the portions of the motion seeking summary judgment were premature because Plaintiffs had not yet had the opportunity to conduct discovery.  (*Id*.).  Therefore, those matters were not decided on their merits.  And, of course, there has been no final judgment on the merits of the issues involved in the present motion.  Therefore, the doctrine of res judicata does not bar the present motion.  *Bilali v. Gonzales*, 502 F.3d 470, 475 (6th Cir. 2007) (doctrine has no application in absence of final judgment on merits).

#### 2.      Civil Conspiracy

Conspiracy claims must be pled with specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under section 1983. *Guiterrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  This Court is not required to search the record to determine whether a genuine issue of material fact exists.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

Plaintiffs claim in their Amended Complaint that Defendants conspired to commit the acts described above.  (Docket no.98 at 14).  However, there are no specific facts alleged there to show that the Defendants agreed to commit these acts and no facts to show that there was a class-based animus for such an agreement.  (*Id*. at 14-15).  In their Response to this motion Plaintiffs point to Plaintiff Scott's affidavit in which he states that Defendant Powell told him that Defendant Burt

knew about her proposal to Plaintiff Scott regarding informing of drug use at the prison.  (Docket no. 124 at 14).  This fact fails to show that Defendant Burt agreed with Defendant Powell to violate any of Plaintiff Scott's rights, however.  Plaintiff Scott also alleges in his Response that Defendant Powell had Defendant Campbell lock him up on December 3, 2003.  (*Id.*).  However, there is no evidence cited to support this statement.  (*Id.*).  Defendant Powell simply states in her affidavit that she received information that Plaintiff Scott was bringing drugs into JMF and took appropriate action to investigate the matter.  (Docket no. 124, ex. 13).  This evidence fails to show that Powell conspired with Campbell to have Plaintiff Scott locked up.  This evidence falls short in establishing that a genuine issue of fact exists for trial on Plaintiffs' contention that Defendants conspired against them and conspired based on a class-based animus.  Plaintiffs' allegations that Defendants violated 42 U.S.C. §§ 1985 and 1986 should be dismissed.  This Court will therefore examine the remaining allegations against the Defendants based on their individual conduct.

### 3.     Due Process and the Drug Allegations

Plaintiffs contend in Count II of their Amended Complaint that Defendants violated their due process rights by designating them as drug smugglers without the benefit of a hearing which led to delays in visitation.  (Docket no. 98 at 15).  Defendants argue that Plaintiffs can produce no evidence that they were personally involved in delaying their visits at prisons.  (Docket no. 120 at 14).  The Court finds that although Plaintiffs complain of being denied visits, they have failed to produce any evidence that their visits were denied; they were delayed only.  (Docket no. 124 ex. 18 (affidavit of Patricia Cotten)).  Plaintiffs attempt to hold Warden Burt liable for the drug incident notation in the visitor tracking system based on the Warden's response to one of Plaintiff Scott's grievances.  (*Id.* ¶ 14).  In that Response Warden Burt states that on January 24, 2004 when Plaintiff Cotten wished

to visit Plaintiff Scott an officer "misinterpreted information on the visitor tracking system to mean that your visitor was restricted." (Docket no. 98 ex. 1 (Grievance JMF04-02-0251-25-Z)). Plaintiffs contend that this shows that Warden Burt "acknowledged a breakdown in the proper working of the department and left it undone." (Docket no. 124 ex. 18 ¶ 14).

Evidence that Defendant Burt failed to act falls short of establishing section 1983 liability. Section 1983 liability must be based on an affirmative act rather than a failure to act. *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999). Merely being aware of a prisoner's complaint and failing to take corrective action is not sufficient. *See Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (finding grievance on issue to be without merit insufficient to state claim). Defendant Burt states in her affidavit that she has "no knowledge that any notation as placed in Visitor Tracking regarding [Plaintiff Cotten] being a drug smuggler." (Docket no. 124 ex. 13). Defendant Burt is therefore entitled to summary judgment on the drug information claim.

Plaintiffs have failed to come forward with evidence showing that Defendants Powell and Campbell committed acts associated with the drug notation on the visitor tracking system. Defendant Powell states in her affidavit that she "did not take any action that would label [Plaintiff Cotten] as a drug smuggler." (Docket no. 124 ex. 13). Defendant Campbell in his affidavit denies that he is responsible for Plaintiff Cotten being designated as a drug smuggler. (*Id*.). Plaintiffs fail to counter these statements with evidence sufficient to create a genuine issue for trial. Accordingly, Defendants should be granted summary judgment on the drug notation issue.[2]

---

[2] Even if Defendants were personally involved in creating the notation, the delay of visitation for approximately an hour caused by the notation is not actionable. *See Moore v. Lehman*, 940 F. Supp. 704, 711 (M.D. Pa. 1996) (delay in prisoner's visitation with counsel did not state claim of denial of access to courts); *Neri v. Coughlin*, 1993 WL 464687 (S.D.N.Y. Nov. 9, 1993) (delay in responding to and deciding plaintiffs' challenges to revocation of visitation privileges did not rise

The copy of the NOI served on Plaintiff Scott reveals that Defendant Campbell created that NOI which gave Plaintiff Scott notice that he might be classified to segregation due to a confidential statement that he was going to attempt to smuggle drugs through the visiting room.  (Docket no. 98 ex. 1).  The notice shows that a hearing was planned.  According to Plaintiff Scott, he was held overnight in a dry cell and then released the next day after no drugs were found.  This set of events fails to show a due process violation.  Placement in administrative segregation in many cases has been found not to constitute an "atypical and significant hardship" in relation to ordinary prison life and thus not entitled to due process protection under *Sandin v. Connor*, 515 U.S. 472, 484 (1995). *McDonald v. Michigan Dep't of Corrections*, 2008 WL 5142179 (W.D. Mich. Dec. 5, 2008).  Even if it is assumed that this was an atypical hardship due to the dry cell aspect of this particular incident of segregation, due process required notice (which Plaintiff received by the NOI) and a hearing within a reasonable time.  (*Id.* (citing *Hewitt v. Helms*, 459 U.S. 460 (1983)).  In this case Plaintiff Scott's release from segregation the day after he was placed there obviated the need for a hearing, and the fact that a hearing was not held within one day of his placement in segregation was not unreasonable.  *See id.* (misconduct hearing held within 13 days reasonable as a matter of law). Accordingly, Defendant Campbell is entitled to summary judgment based on Plaintiff Scott's placement in segregation.

### 4.    Equal Protection and Plaintiff Scott's Prison Transfers

Plaintiff Scott alleges that he was repeatedly transferred to different prisons in retaliation for his filing grievances.  (Docket no. 98 at 17).  He alleges that these actions caused him to lose a career opportunity in visual graphic technology, a course of study he was engaged in at JMF.  (*Id.*).

---

to level of due process violation).

Plaintiff Scott also alleges that the transfer out of JMF interfered with his religion and his position as Assistant Grand Sheik. (*Id*.). Plaintiff Scott further alleges that Defendants should have more quickly initiated a "SPON," or special offender notice, which would have allegedly required his separation from prisoner Stoychoff. (*Id*. at 18). Finally, Plaintiff Scott alleges that Defendants should not have placed his name in the visitor tracking system as a drug smuggler. (*Id*.).

Plaintiffs fail to create a genuine issue of fact for trial on the issue of whether Defendants had sufficient personal involvement in the drug notation issue, as discussed above. The incident with prisoner Stoychoff occurred at a prison other than JMF at which Defendants worked. (Docket no. 98 at 11). Plaintiffs have not come forward with evidence that Defendants acted or had a duty to act in connection with that incident. Prisoner Stoychoff apparently owed another inmate a gambling debt and was concerned over that inmate's "intentions" regarding the debt. (Docket no. 124 ex. 6 (affidavit of Prisoner Stoychoff)). He wanted to be placed in protective custody. As a result, Prisoner Stoychoff states that he made false allegations against Plaintiff Scott that he owed Scott some money for drugs in the hope of getting locked up. (*Id*.). Unfortunately for Plaintiff Scott, these allegations apparently resulted in an investigation of him. However, prisoner Stoychoff does not implicate any of the Defendants in this series of events, and Plaintiffs have not come forward with evidence of their involvement. (*Id*.). Therefore, Defendants are entitled to summary judgment on claims related to prisoner Stoychoff's allegations against Plaintiff Scott.

Plaintiff Scott alleges that he was transferred to four prison facilities within five months. (Docket no. 124 at 18). He does not allege or show that his custody level changed as a result. The Sixth Circuit has stated that even repeated prison transfers are not evidence of an adverse action for retaliation purposes unless the transfers adversely impacted the prisoner's exercise of First

-10-

Amendment rights. *Hix v. Tennessee Dep't of Corrections*, 196 Fed. App'x 350, 357 (6th Cir. 2006). The prisoner has no right to remain at a particular institution or to prison employment or a particular prison job. *Id*.; *Jewell v. Leroux*, 20 Fed. App'x 375, 377-78 (6th Cir. 2001). Plaintiff Scott has not presented significant probative evidence showing that any of the recognized aggravating factors arose due to his transfers. He has not shown that the loss of his religious position at JMF interfered with the practice of his religion in any manner other than the obvious, that he was no longer the Assistant Grand Sheik. There also is no showing that the termination of Plaintiff Scott's course of study in visual graphics interfered with the exercise of any First Amendment right.

An equal protection violation requires a showing of discriminatory purpose which implies that the defendant selected a course of action because of its detrimental effects on an identifiable group. *See Ropoleski v. Rairigh*, 886 F. Supp. 1356, 1363 (W.D. Mich. 1995). Plaintiff Cotten states in her affidavit that Plaintiffs "never made a racial discrimination [claim] at JMF." (Docket no. 124 ex. 18 ¶ 17). She states that Plaintiff Scott made such a claim at MCF regarding prisoner Stoychoff. As found above, Plaintiffs have failed to show that Defendants were involved in the incident with prisoner Stoychoff. Therefore, an equal protection violation against Defendants based on racial discrimination is not shown. Plaintiff Scott also mentions his career program in connection with the equal protection violation. (Docket no. 98 at 17). However, a transfer to a prison which does not offer programs in which the inmate had previously participated is not an "adverse action" for retaliation purposes. *Friedmann v. Corrections Corp. of America*, 11 Fed. App'x 467, 471 (6th Cir. 2001). Plaintiff also fail to show that an identifiable group was detrimentally affected by Plaintiff Scott's loss of his study program. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' equal protection claims.

-11-

**III.**     **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: April 21, 2009                          s/ Mona K. Majzoub
                                               MONA K. MAJZOUB
                                               UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Patricia Cotten, James Scott and Counsel of Record on this date.

Dated: April 21, 2009                             <u>s/ Lisa C. Bartlett      </u>
                                                  Courtroom Deputy